## INSTRUCTION NO. 1

I will now summarize the claims and defenses of the parties.

**Plaintiff's Statement of the Case:**

Plaintiff Harris is a black man who was the Assistant Basketball Coach at Sand Creek High School in Colorado Springs during the 2016-2017 school year. Plaintiff Harris's employer was the Falcon 49 School District. Falcon 49 School District terminated Mr. Harris's employment in January 2017, claiming that he had violated an athletics eligibility rule imposed on schools across Colorado by Defendant Colorado High School Activities Association. While terminating Mr. Harris, Falcon 49 School District stated that it was firing Plaintiff him at the direction of Defendant CHSAA.

Plaintiff Harris claims that he did not violate any CHSAA rules, and that Defendant CHSAA and his employer Falcon 49 School District coordinated to falsely blame him for rule violations committed by CHSAA itself and the Sand Creek High School's white Head Coach and white Athletic Director. The circumstances that led to Plaintiff Harris's termination arose when Romeo Maestas, a boy Plaintiff Harris had previously trained at a basketball training camp in 2014, transferred to Sand Creek High School in the middle of the school year. After Maestas played in his first varsity basketball game for Sand Creek High School, it became apparent that his transfer has been improper.

Plaintiff Harris claims that Sand Creek High School Athletic Director Jared Felice (who is white) personally arranged for the boy's transfer, and CHSAA

1

improperly approved the transfer in violation of its own rules. Head Coach Robert Hawkins (who is white) improperly decided to play Maestas in the basketball game. Plaintiff Harris had no involvement in the transfer or Hawkins' decision to play Maestas in the game. Nonetheless, Falcon 49 School District and Defendant CHSAA chose to fire Plaintiff Harris, while Hawkins was allowed to continue as Head Coach and Felice remained as Athletic Director. Because Falcon 49 School District terminated Plaintiff Harris, Defendant CHSAA allowed the Sand Creek High School basketball team to play in the playoffs.

Plaintiff Harris claims that Defendant CHSAA discriminated against him because of his race in violation of 42 U.S.C. § 1981 and "aided, abetted, incited, compelled, or coerced" race discrimination in violation of the Colorado Anti-Discrimination Act, C.R.S. § 24-34-402(1)(a)(1). Mr. Harris claims that CHSAA's actions severely damaged his reputation in the community and harmed his ability to earn income through his private basketball training business PLUTO Basketball.

**Defendant's Statement of the Case:**

Defendant is the Colorado High School Activities Association or "CHSAA." CHSAA is a voluntary membership organization of Colorado high schools formed to help organize their interscholastic activities. CHSAA is a separate legal entity from its member schools, including Sand Creek High School. It does not employ the coaches and assistant coaches of its member schools, and it does not have the authority to hire or fire school employees.

2

CHSAA's rules are designed to prevent recruitment of student athletes between schools. A student whose transfer is "substantially motivated by athletic considerations" is ineligible. A student who transfers to a school where their previous coach or trainer is a coach is deemed to have transferred for athletic considerations.

On January 2, 2017, the Sand Creek boys basketball team allowed an ineligible transfer student to play in a game. The student had previously trained under Sand Creek's assistant coach, Plaintiff Trey Harris, who runs a basketball camp in the region. Sand Creek informed CHSAA of the rule violation soon after it discovered the athlete had been ineligible to play.

In accordance with its standard practices and procedures, CHSAA placed the Sand Creek basketball team, its head coach, and assistant coach Trey Harris on "restriction," meaning the team would not be eligible to play in the playoffs at the end of the regular season despite being a title contender. However, CHSAA informed Sand Creek that it would temporarily lift the restriction and place the team on probation if Sand Creek presented "specific constructive actions to prevent reoccurrence of the violation."

Roughly two weeks later, Sand Creek informed CHSAA that it had adopted four corrective actions, one of which was the termination of Plaintiff Trey Harris's position as assistant coach. CHSAA accepted Sand Creek's plan and permitted the team to participate in the playoffs.

3

Plaintiff alleges CHSAA intentionally discriminated against him because of his race and claims that, but for CHSAA's interference, his position as assistant coach would not have been terminated. Plaintiff further alleges Sand Creek's decision to terminate him was discriminatory, and that CHSAA aided, abetted, incited, compelled, or coerced Sand Creek into acting discriminatorily.

CHSAA denies Plaintiff's allegations and asserts it acted in a race-neutral manner in applying a standard corrective action for a rule violation that Sand Creek had self-reported. CHSAA accepted Sand Creek's proposed corrective actions and lifted the restriction on the boys basketball team without any consideration of Plaintiff's race.

## INSTRUCTION NO. 2

The parties have stipulated to certain facts. This agreement makes the presentation of any evidence to prove this fact unnecessary. The agreement means that you must accept this fact as true.

In this case, the parties have stipulated to the following facts:

1. Mr. Harris is an African-American male who owns a basketball training company called PLUTO in Colorado Springs, Colorado.

2. In 2016, Falcon 49 School District hired Mr. Harris as an Assistant Coach of the Sand Creek High School varsity basketball team for the 2016-2017 school year.

3. Sand Creek High School is a school within the Falcon 49 School District.

4. Robert Hawkins was the Head Coach of the Sand Creek High School varsity basketball team for the 2016-2017 school year.

5. Jared Felice is the former Sand Creek High School Athletic Director.

6. Sean Dorsey is the Sand Creek Zone Superintendent.

7. Paul Andersen is the Falcon 49 School District Human Resources Director.

8. Paul Angelico is the former CHSAA Commissioner. Mr. Angelico was the Commissioner during the 2016-17 school year.

9. Sand Creek High School played Romeo Maestas in its January 2, 2017 varsity basketball game.

10. Mr. Andersen and Mr. Dorsey met with Plaintiff on January 27, 2017, and informed him his employment with Falcon 49 School District was terminated.

11. By letter dated February 13, 2017, CHSAA lifted the restriction on the Sand Creek High School boys' basketball program and Mr. Hawkins.

**INSTRUCTION NO. 3**

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. Corporations and governmental agencies are entitled to the same fair trial as a private individual. All persons, including corporations, governmental agencies, and other organizations stand equal before the law, and are to be treated as equals. You should not be influenced by who the parties are, or who the witnesses are, i.e., whether they are rich or poor, young or old, well-educated or not.

You also should be aware of the natural human tendency to look at others, and to filter what they have to say, through the lens of our own personal experience and background. Because we all do this, we often see life – and evaluate evidence – in a way that tends to favor people who are like ourselves or who have had life experiences like our own. In deciding this case, I urge you to be aware of this natural human tendency to stereotype other people and to make assumptions about them based on the stereotypes, and I urge you to avoid such stereotyping.

## INSTRUCTION NO. 4

In deciding the facts, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. In considering the testimony of any witness, you may take into account many factors, including the witness' opportunity and ability to see or hear or know the things the witness testified about; the quality of the witness' memory; the witness' appearance and manner while testifying; the witness' interest in the outcome of the case; any bias or prejudice the witness may have; other evidence that may have contradicted the witness' testimony; and the reasonableness of the witness' testimony in light of all the evidence. The weight of the evidence does not necessarily depend upon the number of witnesses who testify. The test is not which side brings the greater number of witnesses or takes the most time to present its evidence, but which witnesses and which evidence appeal to your minds as being most accurate and otherwise trustworthy.

A witness may be discredited or impeached by contradictory evidence; or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness' present testimony. You may, in short, accept or reject the testimony of any witness in whole or in part. If you believe any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness such credibility, if any, as you may think it deserves.

If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness' testimony in other particulars and you may reject all the testimony of that witness or give it such credibility as you may think it deserves. An act or omission is "knowingly" done if voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

# INSTRUCTION NO. 5

Unless you are otherwise instructed, the evidence in the case consists of the sworn testimony of the witnesses regardless of who called the witness, all exhibits received in evidence regardless of who may have produced them, and all facts and events that may have been admitted or stipulated to and all facts and events that may have been judicially noticed.

Statements and arguments by the lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statement, closing arguments, and at other times is intended to help you understand the evidence, but it is not evidence. However, when the lawyers on both sides stipulate or agree on the existence of a fact, unless otherwise instructed, you must accept the stipulation and regard that fact as proved.

Any evidence to which I have sustained an objection and evidence that I have ordered stricken must be entirely disregarded.

Any finding of fact you make must be based on probabilities, not possibilities. You should not guess or speculate about a fact.

The law does not require any party to call as witnesses every person who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial. Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.

## INSTRUCTION NO. 6

You are to consider only the evidence in the case. However, you are not limited to the statements of the witnesses. You may draw from the facts you find have been proved such reasonable inference as seem justified in light of your experience.

"Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.

Generally speaking, there are two types of evidence that are presented during a trial – direct evidence and circumstantial evidence. "Direct evidence" is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness. "Circumstantial evidence" is proof of a chain of facts and circumstances indicating the existence or nonexistence of a fact.

As an example, direct evidence that it is raining is testimony from a witness who says, "I was outside a minute ago and I saw it raining." Circumstantial evidence that it is raining is the observation of someone entering a room carrying a wet umbrella.

As a general rule, the law makes no distinction between direct and circumstantial evidence. The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

## INSTRUCTION NO. 7

A witness qualified as an expert by education, training, or experience may state opinions. You should judge expert testimony just as you would judge any other testimony. You may accept it or reject it, in whole or in part. You should give the testimony the importance you think it deserves, considering the witness's qualifications, the reasons for the opinions, and all of the other evidence in the case.

# INSTRUCTION NO. 8

Plaintiff Trey Harris has the burden of proving his claims by a preponderance of the evidence.  To prove something by a "preponderance of the evidence" means to prove that it is more probably true than not true.  This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.  Nor does it require proof "beyond a reasonable doubt" which is a stricter standard that applies in criminal cases.

If you find that the evidence as to a claim or defense weighs so evenly that you are unable to say that there is a preponderance of the evidence on either side, you must reject that claim or defense.

In determining whether any fact in issue has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

Those of you who have participated in criminal cases will have heard of "proof beyond a reasonable doubt."  The standard of proof in a criminal case is a stricter standard, requiring more proof than a preponderance of evidence. The reasonable doubt standard does not apply to a civil case and you should put that standard out of your mind.

## INSTRUCTION NO. 9

Plaintiff Trey Harris claims that Defendant CHSAA's stated reasons for its actions that led to his termination are false, but instead are a pretext (an excuse) to cover up for race discrimination.

If you do not believe one or more of the reasons Defendant CHSAA employer offered for its actions, then you may, but are not required to, infer that race was a factor that made a difference in Defendant CHSAA's decisions. Plaintiff Harris need not disprove every reason stated by Defendant CHSAA in order to prove pretext.

Plaintiff Harris may show that Defendant CHSAA's stated reasons for its actions are pretextual (not the true reason) in any of several ways. Some examples of ways (although these are not the only ways) in which you may determine that Defendant's stated reasons are pretext are:

- Evidence that any one the of Defendant CHSAA's stated reasons for its actions are false, contradictory, or implausible; or

- Evidence that Defendant CHSAA relied on a policy or rule to justify its actions with respect to Plaintiff Harris that did not exist until after Plaintiff Harris's termination; or

- Evidence that Defendant CHSAA acted contrary to a written or unwritten organization policy or an established organizational practice with respect to its actions toward Plaintiff Harris; or

- Evidence that Defendant CHSAA did not uniformly enforce its own rules; or

- Evidence that Defendant CHSAA otherwise exhibited disturbing procedural irregularities in dealing with Plaintiff Harris.

In determining whether Defendant CHSAA's stated reasons for its actions are genuine or pretextual, you may consider any or all of these factors. If you find pretext, you may, but are not required to infer that race was a factor that made a difference in Defendant CHSAA's treatment of Plaintiff Harris.

## INSTRUCTION NO. 10

In this case, Plaintiff Trey Harris brings a claim of race discrimination under a federal civil rights law called Section 1981 of the Civil Rights Act of 1991, also known as "Section 1981."

Section 1981 provides in pertinent part as follows:

(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

For purposes of Section 1981, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the employment relationship.

**INSTRUCTION NO. 11**

In order for Plaintiff Trey Harris to establish his claim for race discrimination under Section 1981, he must prove the following by a preponderance of the evidence:

1. Defendant CHSAA possessed sufficient authority to significantly interfere with Plaintiff Trey Harris's employment with third-party District 49.

2. Defendant CHSAA used its authority to interfere with Plaintiff Harris's employment relationship with District 49; and

3. Plaintiff Harris's race was a "but-for" cause of Defendant CHSAA's action.

If you find that Plaintiff Harris has failed to prove these each of these elements by a preponderance of the evidence, then you must find against him on his Section 1981 discrimination claim and in favor of Defendant CHSAA.

If, on the other hand, you find that Plaintiff Harris has proved each of these elements by a preponderance of the evidence, then you must return a verdict in Plaintiff's favor on his Section 1981 discrimination claim.

# INSTRUCTION NO. 12

Plaintiff Trey Harris is not required to prove that his race was the sole or exclusive reason for Defendant CHSAA's actions or that all of Defendant CHSAA's stated reasons, if any, for its actions that led to the termination of Plaintiff Harris's employment were false. Plaintiff Harris must prove only that his race was a "but-for" cause of Defendant CHSAA's actions that led to the termination of his employment. That is, Mr. Harris must prove only that his race was a factor that made the difference in Defendant CHSAA's actions, meaning that Defendant CHSAA would have acted differently if Plaintiff Harris were not African-American.

In determining whether Plaintiff Harris's race was a "but-for cause" in Defendant CHSAA's actions that led to the termination of Plaintiff Harris's employment, you may consider any statements made or acts done or admitted by Defendant CHSAA, and all other facts and circumstances in evidence indicating state of mind. An improper motive, if it exists, is seldom directly admitted and may or may not be inferred from the existence of other facts.

## INSTRUCTION NO. 13

Plaintiff's second claim for relief alleges a violation of the Colorado Anti-

Discrimination Act ("CADA"). Under CADA, it is a violation for any person or

entity to aid, abet, incite, compel, or coerce the racially discriminatory acts of others.

# INSTRUCTION NO. 14

In order for Plaintiff Trey Harris to establish his claim for aiding, abetting, inciting, compelling, or coercing race discrimination under the Colorado Anti-Discrimination Act, he must prove the following by a preponderance of the evidence:

1. Plaintiff Harris's race was a motivating factor (that is, a factor that made a difference) in the termination of his employment by his employer Falcon 49 School District;

2. Defendant CHSAA knew that race was a motivating factor in the termination of his employment; and

3. Defendant CHSAA engaged in conduct that assisted Plaintiff Harris's employer in its unlawful employment practices or incited or coerced Plaintiff Harris's employer in its unlawful employment practices.

If you find that Plaintiff Harris has failed to prove any or all of these propositions by a preponderance of the evidence, then you must find against him on aiding, abetting, inciting, compelling, or coercing discrimination claim and in favor of Defendant CHSAA. If, on the other hand, you find that Plaintiff Harris has proved each proposition by a preponderance of the evidence, then you must find in his favor and against Defendant CHSAA.

# INSTRUCTION NO. 15

The instructions that follow govern how you should go about awarding damages for Plaintiff's claim in this case. The fact that I am instructing you as to the proper measure of damages should not be considered as indicating any view of mine as to which party is entitled to a verdict in this case. Instructions as to the measure of damages are given for your guidance only in the event you find in favor of Plaintiff on either or both of his claims in accordance with the other instructions.

Difficulty or uncertainty in determining the precise amount of any damages does not prevent you from deciding an amount. You should use your best judgment based on the evidence. You may not award damages based on speculation or guesswork. On the other hand, the law does not require that Plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

## INSTRUCTION NO. 16

If you find that Defendant CHSAA unlawfully discriminated against Plaintiff Trey Harris on the basis of his race or unlawfully aided, abetted, incited, compelled, or coerced race discrimination by District 49, then you must determine the amount of economic damages that Plaintiff Harris proved was caused by Defendant CHSAA's wrongful conduct.

In determining economic damages, you must make the following calculations:

First, calculate the amount of money that Plaintiff Harris would have earned as business revenue in the years 2017 and 2018 in the absence of Defendant CHSAA's wrongful conduct.

Then, subtract the amount of business revenue that Plaintiff actually earned in the years 2017 and 2018.

## INSTRUCTION NO. 17

If you find (1) that Defendant CHSAA unlawfully discriminated against Plaintiff Harris on the basis of his race in violation of Section 1981 or (2) that Defendant CHSAA unlawfully aided, abetted, incited, compelled, or coerced discrimination against Plaintiff Harris in violation of the Colorado Anti-Discrimination Act, then you must determine an amount that is fair compensation for Plaintiff Harris's losses. You may award compensatory damages for injuries that Plaintiff proved were caused by Defendant CHSAA's wrongful conduct. The damages that you award must be fair compensation, no more and no less.

You may award damages for any emotional distress, pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, and damage to reputation that Plaintiff experienced as a consequence of the wrongful conduct. No evidence of monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for setting the compensation to be awarded for these elements of damages. Any award you make should be fair in light of the evidence presented at trial.

In determining the amount of any damages that you decide to award, you should be guided by dispassionate common sense. You must use sound discretion in making an award of damages, drawing reasonable inferences from the facts in evidence.

# INSTRUCTION NO. 18

If you find in favor of the plaintiff on both of his claims, you may award damages on both claims.  However, you can only award the same damages once.  In other words, you should not award the same damages for violation of Section 1981 that you award for violation of the Colorado Anti-Discrimination Act because that would be duplicative and would over-compensate the plaintiff.  The sum of any damages you award with respect to the first claim and any damages you award with respect to the second claim should be the overall total amount of compensatory damages that you find the plaintiff has proven.

Finally, you should not interpret the fact that I am giving instructions about Plaintiff's damages as an indication in any way that I believe that he should, or should not, win this case. It is your task first to decide whether Defendant CHSAA is liable. I am instructing you on damages only so that you will have guidance in the event you decide that Defendant CHSAA is liable and that Plaintiff Trey Harris is entitled to recover money from Defendant CHSAA.

## INSTRUCTION NO. 19

If you find that Defendant CHSAA violated Section 1981 by intentionally discriminating against Plaintiff Trey Harris, the law allows, but does not require, an award of punitive damages. The purpose of an award of punitive damages is to punish a wrongdoer for misconduct, and also to provide a warning to others.

You may award punitive damages if you find that Defendant CHSAA engaged in discrimination with malice or with reckless indifference to the right of Plaintiff Harris to be free from such intentional discrimination. In order to find Defendant CHSAA liable for punitive damages, you must find that Defendant CHSAA discriminated in the face of a perceived risk that its actions would violate federal law.

In deciding the amount of punitive damages, you may consider the following:

1. The offensiveness of the conduct;

2. The amount needed, considering Defendant CHSAA's financial condition, to prevent the conduct from being repeated; and

3. Whether the amount of punitive damages bears a reasonable relationship to the actual damages awarded.

Where discriminatory acts on the part of Defendant CHSAA's managerial employees were contrary to Defendant CHSAA's good faith efforts to comply with the law by implementing and enforcing policies and programs designed to prevent unlawful discrimination, you shall not award punitive damages.

# INSTRUCTION NO. 20

In this case, Plaintiff Trey Harris has made a claim for economic damages in the form of lost business revenue, as described in Instruction No. 16. If you find that Plaintiff Harris has had actual economic damages, then you must consider whether Defendant Colorado High School Activities Association has proved its affirmative defense of Plaintiff Harris's failure to mitigate or minimize damages. Plaintiff Harris has the duty to take reasonable steps under the circumstances to mitigate or minimize his damages. Damages, if any, caused by Plaintiff Harris's own failure to take such reasonable steps cannot be awarded to Plaintiff Harris.

This affirmative defense is proved if you find all of the following have been proven by a preponderance of the evidence:

1. Plaintiff Harris failed to undertake reasonable steps to generate business revenue for his business Pluto Basketball LLC during the years 2017 and 2018;

2. Plaintiff Harris's business suffered lost revenue in the years 2017 and 2018 because he failed to undertake reasonable steps to generate business revenue for his business Pluto Basketball LLC during the years 2017 and 2018.

If you find that either or both of these propositions has not been proved by a preponderance of the evidence, then you shall make no deduction from Plaintiff's economic damages.

On the other hand, if you find that both of these propositions have been proved by a preponderance of the evidence, then you must determine the amount of damages

caused by Plaintiff Harris's failure to take such reasonable steps. This amount must not be included in your award of damages.

**Instruction No. 21**

Plaintiff Trey Harris's lawsuit against CHSAA originally included Falcon 49 School District and the following District and Sand Creek employees: Jared Felice, Sean Dorsey, Paul Anderson, and Rob Hawkins as a co-defendants. However, before this trial those parties resolved their disputes.

You must still determine if Defendant CHSAA is liable for Plaintiff Trey Harris's first and second claims for relief, as detailed under Instruction Nos. 10, 11, 12, 13, and 14. If you determine that Defendant CHSAA is liable under either or both of Plaintiff's claims for relief, then you should return an award that fully compensates Plaintiff for all of his injuries, as detailed under Instruction Nos. 16, 17, and 18, without regard to the fact that Plaintiff might have received some compensation from any of the other parties that were originally part of this case.

## INSTRUCTION NO. 22

The Bailiff will now escort you to the jury room. You must follow these rules while deliberating and returning your verdict:

First, when you go to the jury room, you must select a foreperson. The foreperson will preside over your discussions and speak for you here in court.

Second, it is your duty, as jurors, to discuss this case with one another in the jury and try to reach agreement.

Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of the other jurors.

Do not be afraid to change your opinions if the discussion persuades you that you should. But do not make a decision simply because other jurors think it is right, or simply to reach a verdict. Remember at all times that you are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

Your verdict must be based solely on the evidence and on the law I have given to you in these instructions. The verdict must be unanimous. Nothing I have said or done is intended to suggest what your verdict should be – that is entirely for you to decide.