# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02310-RBJ

WILLIAM T. HARRIS III,

 Plaintiff,

v.

COLORADO HIGH SCHOOL ACTIVITIES ASSOCIATION,

 Defendant.

## PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS

Plaintiff, William T. Harris III, by and through his undersigned attorneys, hereby submits this Motion for Attorney Fees and Costs.

**D.C.COLO.LCivR. 7.1 Certification:** Undersigned counsel has conferred with opposing counsel regarding this Motion. Defendant opposes the relief sought in this motion and will detail Defendant's objections in its response to the same.

### I. Background

This race discrimination litigation concerns the January 2017 termination of Plaintiff Trey Harris's employment as an Assistant Basketball Coach at Sand Creek High School. Plaintiff filed this civil action in September 2018 against multiple defendants, including the Colorado High School Activities Association ("CHSAA").

The case proceeded to a jury trial on April 19, 2021. At trial, CHSAA ("Defendant") was the only remaining defendant. On April 23, 2021, the jury returned a verdict in favor of Plaintiff against Defendant on both of Plaintiff's claims for relief. Specifically, the jury found that Defendant (a) violated 42 U.S.C. § 1981 by discriminating against Plaintiff because of his race and (b) violated the Colorado Anti-Discrimination Act, C.R.S. § 24-34-402(1)(e)(i), by aiding, abetting, inciting, compelling, or coercing unlawful race discrimination. [Dkt. # 118].

With respect to Plaintiff's claim under 42 U.S.C. § 1981, the jury awarded Plaintiff a total of $2,500,000.00. That award was comprised of $200,000.00 in economic damages, $1,300,000.00 in non-economic damages, and $1,000,000.00 in punitive damages. The jury awarded Plaintiff no damages for his claim under the Colorado Anti-Discrimination Act.

Together with the jury's $1,000,000.00 award of punitive damages, the jury also requested that CHSAA publicly clear Mr. Harris' name, something that was very important to Mr. Harris: "***We the jury request that a formal corrective statement to the press be issued clearing Mr. Harris of wrongdoing in this matter.***" [Dkt. #118]. As of the date of this motion, Defendant has not issued any such statement.

In fact, Defendant has done the exact opposite by publicly defending its race-discriminatory treatment of Mr. Harris and attacking the jury's verdict. The very same day of the jury's verdict, on April 23, Defendant began issuing statements to news media outlets stating that it "do[es] not believe the evidence supports the jury's decision." Ex.

2

1. On May 5, Defendant's counsel Alex Halpern went even further, doubling down on CHSAA's behavior by publicly calling the jury's verdict "plainly wrong." In his public comments, Mr. Halpern also implicitly accused multiple trial witnesses of perjury by characterizing the evidence of race discrimination supporting the jury's verdict as "falsehoods." Ex. 2. By its actions, CHSAA has defied the jury's request to publicly clear Mr. Harris of any wrongdoing.

The Court entered judgment on April 26, 2021. [Dkt. # 119]. Through this motion, Plaintiff seeks the attorney fees and costs to which he is entitled as the prevailing party pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 1988.

## II. Argument

**A. The Standards Applicable to Fee and Expense Awards**

A prevailing party under 42 U.S.C. § 1981 is entitled to an award of his costs, including reasonable attorney fees. *See* 42 U.S.C. § 1988(b). Here, the Court has already ordered: "[A]s the prevailing party the plaintiff is awarded his costs, to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1." [Dkt. # 119]. 42 U.S.C. § 1988(b) allows the Court to award Mr. Harris his reasonable attorney fees as part of the costs to which he is entitled as the prevailing party. Mr. Harris respectfully requests an award of his reasonable attorney fees as part of his cost award.

The starting point of an award of attorney fees is the lodestar figure, which is the number of hours reasonably expended multiplied by the attorneys' reasonable hourly

rates. *Blum v. Stenson*, 465 U.S. 886, 897 (1984). There is a strong presumption that the lodestar figure is the reasonable fee. *Id.* In fact, the lodestar figure is presumed to be the "minimum reasonable fee" to which counsel is entitled. *Pennsylvania v. Del. Valley Citizens Council for Clean Air,* 478 U.S. 546, 564 (1986).

In determining whether the hours claimed were reasonably expended, the Court should determine whether the tasks sought to be charged to the opposing party would normally be billed to a paying client. *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983). If so, the hours are fully compensable. In determining whether the hours reported for each task are reasonable, the Court should consider the complexity of the case, whether the strategies pursued were reasonable, and the responses necessitated by maneuvering on the opposing side. *Id.*

The reasonable hourly rate should be based on the prevailing market rate commanded by lawyers of similar skill, experience, and reputation in the relevant community. *Blum*, 465 U.S. at 897. The hourly rate should be "based on the lawyer's skill and experience in civil rights or analogous litigation." *Ramos*, 713 F.2d at 555. A law firm's normal billing rate is entitled to deference, particularly where the firm specializes in a particular field of expertise and the case at issue involves the firm's specialty. *See id.* "It goes without saying that if a court's compensation is not adequate to match what the market will bear for a lawyer's services, then competent lawyers will go elsewhere to offer their services. Such a result would do irreparable damage to our

system of private enforcement of federal civil rights." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).

Plaintiff is also entitled to an award of fees and costs incurred in obtaining an award of attorney's fees and costs. *Hernandez v. George*, 793 F.2d 264, 269 (10th Cir. 1986). Compensating attorneys for their work in resolving the fee issue furthers the purpose of encouraging attorneys to accept federal civil rights cases. *Id.*

To that end, in determining whether a plaintiff is entitled to attorneys' fee under 42 U.S.C. § 1988, courts must also consider the public purpose of the litigation. *Phelps v. Hamilton*, 120 F.3d 1126, 1129-31 (10th Cir. 1997) (quoting *Farrar v. Hobby*, 506 U.S. 103, 115 (1992)). This "public purpose" factor considers whether the plaintiff's claim accomplished a public goal. *Christos v. Halker Consulting, LLC*, No. 16-cv-01838-PAB-NYW, 2019 U.S. Dist. LEXIS 135429, at *8 (D. Colo. 2019) (*quoting Zinna v. Congrove*, 680 F.3d 1236, 1240 (10th Cir. 2012)). "[A] public goal is accomplished if the plaintiff's victory encourages attorneys to represent civil rights litigants, affirms an important right, puts the defendant on notice that it needs to improve, and/or provokes a change in a defendant's conduct." *Id.*

Here, Mr. Harris's trial victory and the jury's substantial verdict vindicated an important statutory right of employees to be free from race-discriminatory interference with employment by third parties. Specifically, Mr. Harris's claims and the jury's verdict affirmed that CHSAA, a powerful organization which exercises control over thousands of student athletes and hundreds of athletic programs cannot continue to use its

authority to discriminate against people of color. Mr. Harris's victory thus vindicates an important statutory right under 42 U.S.C. § 1981 which dates to the nineteenth century. That right to be free from race discrimination is also embodied in multiple constitutional amendments. *See* U.S. Const. amends. 13-15.

Moreover, Mr. Harris's claims and the jury's verdict highlight how the significant and seldom-challenged reality that governing rule-making bodies can force employers to engage in discriminatory conduct, a reality many people of color face but which is frequently subtle enough for powerful organizations like CHSAA to avoid accountability. The jury's award of punitive damages and request for Defendant to publicly clear Mr. Harris of any wrongdoing also made clear to the jury's desire not only to change Defendant's behavior but also to deter similar behavior in the future. Though Defendant has so far refused to issue such a statement, Defendant's intransigence does not diminish the strong message the jury sent to Defendant with its verdict. Finally, a fully compensatory award of attorney fees will no doubt encourage other attorneys to accept similar race discrimination cases in the future.

Altogether, the positive public impact of Mr. Harris's success is significant and bolsters the reasonableness of awarding him all attorneys' fees requested. Plaintiff has included such amounts incurred to date in the itemized billing statement.

Plaintiff is also entitled to recover all other out of pocket costs incurred in this action, to the extent such costs are normally charged to a fee-paying client in the course of representation. *See e.g., Ramos,* 713 F.2d at 559.

**B. The Fees Requested**

The itemized attorney fee and expense statement of Plaintiff's counsel is attached as Ex. 3. The total amount of fees incurred appears at Ex. 3, p. 99. The chart in Exhibit 8 reflects the time spent by each attorney or paralegal on Plaintiff's case during the four years of King & Greisen LLP's representation of Mr. Harris. The amounts in Ex. 8 are supported by Ex. 4, Declaration of Diane S. King, and the itemized fee statement, attached as Ex. 3.

**1.** *The Number of Hours Claimed is Reasonable*

Before submitting the final itemized fee statement here, and as required by *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983), Ms. King undertook a good faith review of the billing statement and eliminated entries totaling more than $60,000 in time to ensure that recovery is sought only for necessary time and to avoid unnecessary duplication of efforts. Ex. 4, King Decl., ¶ 9-13. Some attorneys for whom fees are sought worked on this litigation for relatively short periods of time, or only on discrete pre-trial tasks such as discovery and summary judgment briefing. In eliminating and reducing time entries, Ms. King endeavored to minimize billing for time necessary to transition work in this case between associate attorneys and co-counsel.

Considering the substantial reduction of time, the total amount of attorney fees sought is reasonable given Plaintiff's complete success in obtaining all relief sought, the legal and factual complexity of Plaintiff's claims, and the careful collaboration among attorneys that is necessary to achieve a substantial jury verdict.

In assessing the overall reasonableness of the attorney fees claimed by a prevailing party, "a court should focus on the significance of the overall relief that the prevailing party has won: The result is what matters." *Robinson v. City of Edmond*, 160 F.3d 1275, 1283 (10th Cir. 1998) (internal quotation marks and citation omitted). When, as here, a plaintiff achieves complete vindication on all of his claims, his attorneys should be fully compensated. *See id.*

In addition, Tenth Circuit law recognizes the truism that prevailing in factually- and legally complex litigation requires more attorney time, which should be fully compensated. Here, Mr. Harris's claims involved significant factual complexity, and Mr. Harris prevailed on a seldom-used theory of liability under 42 U.S.C. § 1981 – racially-discriminatory interference with contract by a third party. *See* Ex. 4, King Decl., ¶ 17 .

Finally, a successful jury verdict is only possible with careful preparation, which requires close collaboration and rehearsal throughout the litigation. *See Lockard v. Pizza Hut*, 162 F.3d 1062, 1077 (10th Cir. 1998). Through discovery and trial, Ms. King and Mr. Harris's other attorneys closely collaborated to ensure Mr. Harris's claims would be presented to the jury in the strongest way possible – resulting in a substantial verdict. Thus, to the extent any time could arguably be considered duplicative, such as the attendance of two attorneys at a deposition, that careful collaboration was necessary for Mr. Harris to achieve full vindication of his complex claims.

### *2. Expert Support for Reasonableness of Time.*

To evaluate the reasonableness of time spent on the case, Plaintiff retained David H. Miller, a locally and nationally recognized expert in the field of civil rights. After careful review of the case file, including the pleadings and billing records, and speaking with Plaintiff's attorneys, Mr. Miller confirmed Ms. King had appropriately reduced attorney and paralegal time spent on the case and that the remaining time incurred for which fees are sought was reasonably spent litigating this case. Ex. 6, ¶ 33.

**Plaintiff obtained all relief sought and available by law – including a substantial award of punitive damages – and is entitled to a fully compensatory fee award in the amount of $ 442,251.05.**

### *3. Hourly Rates*

The hourly rates requested by Plaintiff's attorneys are: Diane S. King ($615), Hunter A. Swain ($350); Jennifer W. Bezoza ($390); Meredith A. Munro ($410); Kylie M. Schmidt ($335); Jonathan Freund ($195); Julie K. Bisbee ($355); Erin K. Ryan ($330); and Matthew Fredrickson ($330). King & Greisen, LLP bills paralegal time out at varying hourly rates between $110/hour and $250/hour.

Ms. King has over three decades of experience in litigating complex employment matters for Colorado employees. *Id.* at ¶ 4-6, 8. Ms. King has been repeatedly recognized as one of preeminent employment attorneys in the region, receiving both local and national recognition. *Id.* at ¶ 7. Ms. King has served in leadership positions in state and local bar organizations and is frequently called upon to present on current

issues in employment law for a variety of bar and CLE organizations. *Id.* at ¶ 7. Ms. King has also authored several publications on employment law and discovery. *Id.* at ¶ 7.

Ms. King's background, skills, and experience, and that of the other attorneys in King & Greisen, LLP who worked on the case are detailed in Ex. 4.

Though Mr. Swain is not an attorney at King & Greisen, LLP, he was employed by the law firm as an associate attorney between 2014 and 2018. Since 2018, Mr. Swain has been the principal attorney of the law firm Swain Law, LLC. Mr. Swain has continued to regularly co-counsel and consult about litigation matters with Ms. King and the attorneys at King & Greisen, LLP. The full qualifications of Mr. Swain appear in Ex. 4, King Decl., ¶ 14.

### 4. *Expert Support for Hourly Rates*

To evaluate the reasonableness of the attorneys' rates, Plaintiff has obtained a supporting Declaration from Darold Killmer, a locally and nationally recognized expert in the field of employment law, and Mr. Miller. Both confirm that the hourly rates requested are reasonable and well within the prevailing market rate in the Denver Metro area. *See* Ex. 5, Decl. of Darold Killmer, ¶ 12; Ex. 6, Declaration of David Miller, ¶ 17.

### 5. *Total Fees Requested*

Plaintiff has submitted a thorough and detailed itemized billing statement of the work performed by King & Greisen, LLP and Swain Law, LLC in this case. Ex. 3. The firms have exercised expected and appropriate billing judgment and voluntarily

eliminated over $60,000 of incurred attorney and paralegal time to avoid any appearance of unnecessary duplication or excessiveness.

In exercising discretion to eliminate entries totaling tens of thousands of dollars of attorney and paralegal time, the law firms endeavored to minimize the following categories of time entries: (1) time expended solely on Plaintiff's claims against the dismissed defendants not present as parties at trial; (2) time spent transitioning responsibility for the case between associate attorneys at King & Greisen, LLP; (3) paralegal time spent on administrative matters; (4) time expended at trial by Ms. King and paralegal Kayla Smith; (5) time spent investigating the legal claims of a potential co-plaintiff who did not participate in the litigation; and (6) time spent with an expert who was not retained.

**C. The Costs Requested**

The total amount of costs incurred by Plaintiff in this action was $21,843.73. Plaintiff is submitting his Bill of Costs to the Clerk of Court together with his filing of this motion.

The costs available to a prevailing party under a fee-shifting statute are not limited to the costs awarded by the court pursuant to 28 U.S.C. § 1920. *Id.*; *Brown v. Gray*, 227 F.3d 1278, 1297-98 (10th Cir. 2000); *see also Goodwin v. M.C.I. Communications Corp.*, 1996 WL 162275 at *1 (D. Colo. 1996) (Judge Daniel). The costs available for recovery include printing and copying costs, postage, telephone calls, electronic research, and facsimiles. *See, e.g., Case v. Unified Sch. Dist.*, 157 F.3d 1243, 1257-58 (10th

Cir. 1998); *Goodwin, supra.* The party seeking the recovery of such costs bears the burden of establishing that such costs are normally billed to a private client in the local area. *See, e.g., Vialpando v. Johanns*, 619 F.Supp.2d 1107, 1130 (D. Colo. 2008) (denying award of costs where plaintiff presented no evidence that such costs were routinely billed to clients).

Exhibit 7 contains the itemized costs that were actually billed to Plaintiff throughout the course of this litigation. Primarily, the costs submitted separately to the Clerk of Court in Plaintiff's Bill of Costs include copying costs for discovery documents, parking charges, courier fees, and fees for service of process of a listed trial witness. Such costs are not considered part of the firm's normal overhead and are routinely billed to, and paid by, the firm's clients in any type of representation, whether hourly or contingency. Ex. 4, King Decl., ¶ 9. Furthermore, the costs were reasonable and necessary to successfully litigate Plaintiff's claims. *Id.* at ¶ 9.

Plaintiff has therefore separately submitted a Bill of Costs requesting an award of costs in the amount of $8,092.98.

### D. *Pre- and Post-Judgment Interest*

Plaintiff also requests pre- and post-judgment interest at the highest lawful rates. An award of pre-judgment interest on an award of economic damages is committed to the sound discretion of a district court, and a two-step analysis governs this Court's determination of such an award. *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1286 (10th Cir. 2002). The Court must first determine whether an award of pre-judgment

interest will serve to compensate the plaintiff. *Id.* Second, even if the award of prejudgment interest is compensatory in nature, the district court determine whether an award of pre-judgment interest would be inequitable. *Id.* Here, the award of economic damages to Mr. Harris represents lost wages and business income for his business Pluto Basketball, LLC, which began accruing immediately upon his termination on January 27, 2017.

An award of pre-judgment interest on Mr. Harris's award of economic damages would serve to compensate him for the loss of use of those lost wages and business income – for instance to re-invest in the future growth of his business – between the time his loss began accruing and the date of payment. But Defendant's unlawful discrimination deprived him of the ability to use that money. An award of pre-judgment interest would serve to compensate Plaintiff for the lawful use of his economic damages from which Defendant's actions deprived him.

Moreover, the balance of equities does not preclude an award of pre-judgment interest because it is an essential component of fair and complete compensation to Plaintiff for his injuries. Not only did the jury award Plaintiff $200,000 in economic damages, but it also found that Defendant intentionally discriminated against Plaintiff with malice or with reckless indifference to Plaintiff's right to be free of such discrimination. [Dkt. #114, at 25; Dkt. #118]. Essentially, the jury concluded that Defendant intentionally deprived Plaintiff of the use of his economic damages starting

13

at the date of his injury. An award of pre-judgment interest to Plaintiff would make him whole for Defendant's intentional deprivation.

Finally, 28 U.S.C. § 1961(a) requires post-judgment interest on every civil verdict recovered in a federal district court from the date of entry of judgment until paid. Plaintiff respectfully requests an award of both pre-judgment and post-judgment interest at the highest lawful rates.

### III. Summary of Request

The total amount of attorney's fees and costs requested by Plaintiff is as follows:

**Total Attorney Fees Requested: $442,251.05**

**Total Expenses Submitted via Bill of Costs to the Clerk of Court: $8,092.98**

**TOTAL REQUEST: $450,344.03**

**WHEREFORE**, pursuant to the Judgment entered in this matter, and 42 U.S.C. § 1988(b), Plaintiff hereby requests that this Court enter a fully compensable award of attorney's fees and costs in this matter in the amount of $450,344.03.

Respectfully submitted this 17th day of May 2021 by:

| | |
|---|---|
| SWAIN LAW, LLC | KING & GREISEN, LLP |
| */s/ Hunter A. Swain* | */s/ Diane S. King* |
| Hunter A. Swain | Diane S. King |
| 1490 N. Lafayette St., Ste 303 | Matthew Frederickson |
| Denver, CO 80218 | 1670 York Street |
| Tel: (720) 815-5281 | Denver, CO 80206 |
| hunter@swainemploymentlaw.com | Tel: (303) 298-9878 |
| | king@kinggreisen.com |
| | frederickson@kinggreisen.com |
| *Attorney for Plaintiff* | *Attorneys for Plaintiff* |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of May 2021, I personally filed the foregoing **PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS** with the Clerk of Court using the CM/ECF system, which will cause such filing to be served via email to the following:

| | |
|---|---|
| Alexander Halpern | Justin Miller |
| ALEXANDER HALPERN, LLC | CAPLAN & EARNEST, LLC |
| 1345 Spruce Street, Second Floor | 3107 Iris Avenue, Suite 100 |
| Boulder, CO 80304 | Boulder, CO 80301 |
| Tel: (303) 449-6180 | Tel: (303) 443-8010 |
| ahalpern@halpernllc.com | jmiller@celaw.com |
| | |
| *Attorney for Defendant* | *Attorney for Defendant* |

/s/ *Kayla Smith*
Kayla Smith, Paralegal